**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Howard Quinton CAMPBELL,
Defendant–Appellant.**

**No. 91–5882.**

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1992.

Decided Nov. 9, 1992.

Harry F. Hambrick, Jr., Roanoke, Va., argued, for defendant-appellant.

Stephen Urban Baer, Asst. U.S. Atty., Roanoke, Va., argued (E. Montgomery Tucker, U.S. Atty., on brief), for plaintiff-appellee.

Before MURNAGHAN and HAMILTON, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

LEGG, District Judge:

Appellant Howard Quinton Campbell was convicted of various drug-related offenses and sentenced to ten years in prison. Campbell challenges his conviction and sentence on several grounds. For the reasons set forth below, we affirm the decision of the district court.

### I.

This case arises out of an undercover sting operation aimed at an outdoor crack cocaine market in Roanoke, Virginia. As part of the operation, Officer Kirk Hubbard of the Roanoke City Police Department worked as an undercover agent; Campbell was one of his targets.

The sting operation took place over a four-day period and involved several drug transactions between Hubbard and Campbell. The first meeting was on December 3, 1990, when Hubbard purchased two rocks of crack cocaine from Campbell for fifty dollars.

The next morning Hubbard returned to the outdoor market and purchased five more rocks of crack cocaine for one-hundred dollars. Later that same afternoon, Hubbard, equipped with a miniature tape recorder and carrying five-hundred dollars, returned to the area. While Hubbard was waiting for Campbell, he observed a transaction taking place between Campbell, Barry Lee Beamer, Campbell's co-defendant at trial, and an unidentified female. Hubbard testified that he heard Campbell instruct Beamer to "get her," which, according to Hubbard, meant to sell crack cocaine to the female. Beamer then sold an unspecified amount of crack to the woman. Soon after

that transaction, Hubbard completed his third deal with Campbell: Hubbard handed Beamer five-hundred dollars, Beamer counted the money, and then Campbell provided Hubbard with approximately twenty rocks of cocaine.

The final transaction in the sting operation took place two days later when Hubbard purchased another two rocks from Campbell for forty-five dollars.

Based on these activities, a grand jury returned, on January 16, 1992, a four-count indictment against Campbell: (1) conspiracy to distribute crack cocaine, 21 U.S.C. § 846; (2) two counts of distributing less than five grams of crack cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) distributing five grams or more of crack cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii) and 18 U.S.C. § 2.

Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851, which informed Campbell that if he was convicted, the government would seek to enhance his sentence under 21 U.S.C. § 841(b)(1)(C) because he was a repeat offender with a previous Virginia state drug conviction.

On May 23, 1991, thirty-two individuals from a pool of randomly selected registered voters were summoned for jury service in this case in the United States District Court for the Western District of Virginia, Roanoke Division. Only one of the persons on the venire panel was black. The government used a peremptory strike to excuse that juror, and Campbell made a *Batson*[1] motion in opposition. The district court held a hearing on the motion, and counsel for Campbell questioned the Assistant United States Attorneys as to their reasons for striking the juror. The attorneys explained that the juror was one of many who were struck because they were victims of crime. Campbell offered no evidence that this justification was pretextual.

The district court then denied Campbell's *Batson* motion. Following a two-day trial on May 23–24, 1991, the jury returned a verdict of guilty on all counts.

After the conviction, but prior to sentencing, the government filed a motion to amend its section 851 information. The government contended that because of a clerical mistake, the original information sought enhancement pursuant to section 841(b)(1)(C), but instead should have referenced section 841(b)(1)(B).[2]

After his conviction, but prior to sentencing, Campbell filed a motion challenging the government's intention to enhance his sentence because of a prior state conviction. Campbell had been sentenced under a Virginia deferral statute that applies to individuals with no prior record who are charged with simple possession of drugs, without intent to distribute. The statute permits the state judge, without entering a judgment of guilt, to place the defendant on probation. If the first-time offender successfully completes the sentence of probation, then his criminal record is expunged. If, however, the offender violates the terms of probation, the court may revoke probation, reopen the case, adjudge the defendant guilty, and impose a new sentence. Va.Code § 18.2–251.

Under the deferral statute, a Virginia state court sentenced Campbell to a term of probation on May 24, 1990, which was prior to the December 1990 offense dates charged in the federal indictment. Because Campbell violated probation, the state court revoked the deferral and entered a final state conviction on March 12, 1991. This occurred prior to Campbell's federal trial and sentencing.

The district court held a full motions hearing at which Campbell was represented by counsel. The district judge heard argument regarding (i) the proposed amend-

---

1. In *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986), the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race...."

2. Section 841(b)(1)(C) states that repeat drug offenders "shall be sentenced to a term of imprisonment of not more than 30 years." In contrast, section 841(b)(1)(B) provides that repeat offenders "shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment."

ment to the information and (ii) whether the May 24, 1990 Virginia deferral order amounted to a "prior conviction" for purposes of the sentencing enhancement provisions of section 841. Title 21, United States Code, section 841(b)(1)(B) states in pertinent part:

> If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State ... relating to narcotic drugs ... have become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment.

At the conclusion of the hearing, the district court permitted the government to amend because the original information gave Campbell notice of the prior state criminal proceeding on which the government intended to rely; the citation to the wrong subsection of section 841 had not prejudiced Campbell in any way, Concluding that the deferred state sentence constituted a prior conviction for purposes of enhancing Campbell's sentence under section 841, the district court then imposed the ten-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B).

This appeal followed on five issues: (1) whether the district court erred in denying the defendant's *Batson* motion; (2) whether there was sufficient evidence from which the jury could infer a conspiracy between Campbell and Beamer; (3) whether Campbell's prior state deferred sentence amounted to a conviction for purposes of 21 U.S.C. § 841; (4) whether the district court erred in permitting the government to amend the information after the trial; and (5) whether the district court erred in failing (i) to inquire specifically whether Campbell affirmed or denied his prior state

conviction and (ii) to advise Campbell that any challenge to the prior conviction must be raised before his sentence was imposed. 21 U.S.C. § 851(b).

## II.

■ The first issue is whether the district court erred in rejecting the defendant's *Batson* challenge. The district court's decision will be reversed only if it was clearly erroneous. *United States v. Grandison*, 885 F.2d 143 (4th Cir.1989).

In *United States v. Joe*, 928 F.2d 99 (4th Cir.1991), this Court established a burden-shifting framework when a *Batson* challenge has been made. The defendant establishes a *prima facie* case of discrimination by showing that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant must show facts sufficient to raise an inference of discriminatory intent by the government based on all of the relevant circumstances. *Joe*, 928 F.2d at 102. After the defendant presents a *prima facie* case of discrimination, the government must come forward with a racially neutral explanation for the use of its peremptory challenges. If the government offers explanations that are facially neutral and related to the case, a defendant may, nevertheless, meet his burden of establishing purposeful discrimination by proving that the prosecutor's explanations are pretextual.[3] *Id.*

In this case, both the defendant and the struck juror are black. Although a prima facie case of discrimination does not arise every time a prosecutor strikes a black prospective juror, the district court found that Campbell had established a *prima facie* case. Where, as here, the district court determined that a *prima facie* case was

---

**3.** The *Batson* framework has been expanded recently. In *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court held that the prosecutor in the trial of a white criminal defendant is prohibited from excluding black jurors on the basis of race. In *Edmonson v. Leesville Concrete Co.*, — U.S. —, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the

Court held that neither party in a civil action may use its peremptory strikes in a racially discriminatory manner. Finally, in *Georgia v. McCollum*, — U.S. —, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court held that a criminal defendant is prohibited from engaging in purposeful discrimination on the basis of race in his exercise of peremptory challenges.

made out by the defendant and a hearing was held, this Court will proceed to consider the government's proffered explanations for the use of its strike. *Joe*, 928 F.2d at 103; *United States v. Lane*, 866 F.2d 103, 105 (4th Cir.1986).

In Campbell's case, the government explained that the sole black venire member was struck because she was among a group of potential jurors whom the government intended to strike because they were victims of crime and might have, therefore, been dissatisfied with the police. This rationale qualifies as a facially neutral basis for the government's decision to strike the woman from the venire panel.

In an attempt to show pretext, defense counsel was permitted to conduct direct examination of the Assistant United States Attorneys to inquire about their reasons for exercising the strike. The defense presented evidence that the juror who was struck was a well-known and vocal critic of the Roanoke City Police Department and that the government attorneys were aware of this.

In deciding the *Batson* motion, the district court credited the testimony of the government lawyers and found that they had articulated sufficient reasons other than race for exercising the strike. Without more, we do not find the district court's decision to deny the defendant's *Batson* challenge clearly erroneous.

Accordingly, the district court decision to deny the defendant's *Batson* motion is affirmed.

### III.

■ Campbell next attacks the jury's verdict and argues that there was insufficient evidence from which a jury could find a conspiracy to distribute. We must sustain the jury's finding of guilt "if there is substantial evidence, viewing the evidence in the light most favorable to the government, to support the finding of guilt." *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir.1992). The test is whether *"any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rusher*, 966 F.2d at 878 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

To establish a conspiracy under 21 U.S.C. § 846 the government must prove beyond a reasonable doubt: "(1) an agreement between two or more persons to undertake conduct that would violate the laws of the United States relating to controlled substances and (2) the defendant's wilful joinder in that agreement." *United States v. Clark*, 928 F.2d 639, 641–42 (4th Cir.1991).

Two separate incidents, as related by Officer Hubbard at trial, provide evidence sufficient as a matter of law to support Campbell's conspiracy conviction. First, on December 4, 1990, Campbell and Beamer were involved in a drug transaction with an unidentified female. To complete the deal Campbell directed Beamer to sell crack cocaine to the woman, and Beamer did so. Later that afternoon, Beamer and Campbell collaborated in selling drugs to Hubbard. During the deal with Hubbard, Beamer took and counted Hubbard's money while Campbell provided the drugs. These instances provide ample basis for a jury to infer a voluntary agreement between Campbell and Beamer to distribute drugs.

Accordingly, we affirm Campbell's conviction.

### IV.

■ Campbell next appeals from the district court's decision to enhance his sentence pursuant to 21 U.S.C. § 841. Under section 841, a person who commits a federal drug violation, after a prior conviction for another drug offense has become final, is subject to at least ten years' enhancement of his federal sentence. *See* 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), (b)(1)(C), and (b)(1)(D).[4] On May 24, 1990, the Circuit Court of the City of Roanoke sentenced Campbell, as a first-time drug offender

---

4. The possible enhancements under these subsections vary depending upon the nature of the prior conviction and the present federal conviction.

charged with simple possession, to a term of supervised probation. Pursuant to the Virginia deferral statute,[5] the state court provided in its Judgment Order that the action was taken "without entering a judgment of guilt." Thus, the Virginia sentence of probation was entered prior to December 1990, the offense date charged in Campbell's federal indictment, and prior to the date the federal indictment was returned, January 16, 1991. Campbell, however, violated probation and, on March 12, 1991, the Virginia state court revoked probation and entered a final order of conviction sentencing Campbell to prison. This occurred after the drug transactions that prompted Campbell's federal arrest.

This is the first time that we have been called upon to determine whether a sentence of probation under a state deferral statute such as Virginia's is a final "prior conviction" for purposes of the sentence enhancement provisions of section 841.[6] We are not, however, without guidance in this area. We note that the United States District Court for the Eastern District of Michigan addressed the issue now before us in the context of the Michigan first offender statute, which is virtually identical to the Virginia statute.[7] *See United States v. Petros*, 747 F.Supp. 368 (E.D.Mich.1990).

In that case, Wisam "Sammy" Petros pleaded guilty in August 1988 to possession with intent to deliver less than twenty-five grams of cocaine. He was then sentenced to a two-year term of probation pursuant to the first offender provision of the Michigan controlled substances act, which permits the court, "without entering a judgment of guilt with the consent of the accused, [to] defer further proceedings and place the individual on probation upon terms and conditions."[8] In November 1989, Petros was indicted by a federal grand jury for conspiracy to distribute over five-hundred grams of cocaine. At the time of the indictment, Petros was still on probation under the Michigan statute. The district court held that because Petros had not appealed his Michigan sentence of two years probation, and because the time for taking an appeal from that sentence had expired, his Michigan sentence constituted

---

5. The statute provides in part:

   Whenever any person who has not previously been convicted of any offense under this article or under any statute of the United States or of any state relating to narcotic drugs, marijuana, or stimulant, depressant, or hallucinogenic drugs, or has not previously had a proceeding against him for violation of such an offense dismissed as provided in this section, pleads guilty to or enters a plea of not guilty to possession of a controlled substance ... the court, upon such plea if the facts found by the court would justify a finding of guilt, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place him on probation upon terms and conditions.... Upon violation of term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall discharge the person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without adjudication of guilt and is a conviction only for the purposes of applying this section in subsequent proceedings.

   Va.Code § 18.2–251.

6. Interpretation of the "final conviction" language used in section 841 is a matter of federal, rather than of state, law because it involves a

federal statute. *United States v. Morales*, 854 F.2d 65, 68 (5th Cir.1988).

7. At oral argument counsel for Campbell did not distinguish the instant case from *Petros*, counsel instead argued that we should decline to follow that case.

8. The Michigan statute provides in pertinent part:

   When an individual who has not previously been convicted of an offense under this article or any statute of the United States or of any state relating to [drugs], pleads guilty to or is found guilty of possession of a controlled substance under [Michigan law], ... the court, without entering a judgment of guilt with the consent of the accused, may defer further proceedings and place the individual on probation upon terms and conditions. Upon violation of term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall discharge the individual and dismiss the proceedings. Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for purposes of this section....

   Michigan Controlled Substances Act, Mich. Comp.Laws § 333.7411(1).

a final conviction for purposes of the federal sentencing enhancement provisions of 21 U.S.C. § 841(b)(1)(B).[9] *Petros,* 747 F.Supp. at 373.

The rationale behind deferral statutes is to permit first offenders the opportunity to learn from their mistakes and to give them a second chance by expunging their records. "It is clearly not meant to provide them with a technical legal advantage if, not having learned a lesson, they continue their criminal conduct." *Petros,* 747 F.Supp. at 376. To treat a deferred sentence as something other than a "prior conviction" would "completely frustrate the policy behind the enhancement provisions of the federal statute, i.e., to penalize and deter repeat offenders." *Id.*

We are also guided by a decision of the Supreme Court in which the Justices considered whether a deferred sentence under a state deferral statute constitutes a felony conviction for purposes of 18 U.S.C. § 922(g) and (h), which prohibits a convicted felon from possessing a firearm.[10] In *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), the Supreme Court reasoned that although "there was no written adjudication of guilt and there was no formal pronouncement of a sentence of imprisonment for a specified term … it was plainly irrelevant to Congress whether the individual receives a prison term…. [O]ne cannot be placed on probation if the court does not deem him to be guilty of a crime…." *Dickerson,* 460 U.S. at 113–14, 103 S.Ct. at 992. The possibility of later "expunction

under state law does not alter the historical fact of the conviction." *Dickerson,* 460 U.S. at 115, 103 S.Ct. at 993.

We find the reasoning of *Petros* and *Dickerson* persuasive. For purposes of sentence enhancement, the issue is not whether there has been a formalistic adjudication of guilt; rather, the district court must consider whether the defendant has been previously convicted and sentenced for a criminal drug offense. A sentence of probation, though subject to expunction, constitutes a "prior sentence" for purposes of sentence enhancement. Accordingly, we find as a matter of federal law that Campbell's deferred sentence under Virginia state law constitutes a prior conviction for purposes of section 841, and we affirm the district court's decision to enhance Campbell's sentence based upon that conviction.

## V.

■ Prior to trial, or the entry of a guilty plea, the government must file an "information" stating the previous convictions it relies upon when seeking enhancement under section 841. 21 U.S.C. § 851(a)(1). In this case the government filed an information before trial which specifically stated that it would pursue enhancement based on Campbell's Virginia conviction. Campbell contends that the government is bound by its original information which sought enhancement under sub-part (C), rather than under sub-part (B) of section 841(b)(1), and that the government is precluded from amending prior to sentencing.

9. The Third, Fifth, Ninth and Eleventh Circuits have ruled that the final conviction language of section 841 applies to convictions that are "no longer subject to examination on direct appeal, including an application for certiorari to the United States Supreme Court, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review." *Morales,* 854 F.2d 65, 69. Accordingly, Campbell's Virginia conviction was "final" under section 841 on June 23, 1990, thirty days after his May 24, 1990 sentencing. Virginia Supreme Court Rule 5A:6(a) provides: "No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, counsel files with the clerk of the trial court a notice of appeal…." Thus,

Campbell's state sentence of probation became final before he committed the federal drug offenses in December of 1990.

10. In *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), the Supreme Court was called upon to decide "whether firearms disabilities imposed by 18 U.S.C. § 922(g) and (h) apply with respect to a person who pleads guilty to a state offense punishable by imprisonment for more than one year, when the record of the proceeding subsequently is expunged under state procedure following a successfully served term of probation." 460 U.S. at 105. The Court held that the statutory disabilities applied.

We find that the district court properly permitted amendment. The purpose of the section 851 information "is to give the person convicted and about to be sentenced as a second offender an opportunity to show that he is not the person previously convicted." *Baca v. United States*, 312 F.2d 510 (10th Cir.1962). No prejudice resulted from allowing the government to amend, because nowhere in section 851 is the United States Attorney required to specify which subsection he is relying on for enhancement. The original information clearly identified the Virginia conviction as the basis for enhancement of Campbell's federal sentence. The purpose of amendment was to correct a clerical error.[11] At oral argument, Campbell's attorney conceded that his trial strategy would have been no different had the government's pretrial information recited the correct sub-part. Therefore, we affirm the district court's decision to permit the government to amend its information.

## VI.

Campbell challenges his federal sentence claiming that the trial record does not contain the required colloquy between himself and the district court. Prior to the pronouncement of sentence, the district court must "inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). This procedure provides the defendant with a full and fair opportunity to establish that he is not the previously convicted individual or that the conviction is an inappropriate basis for enhancement under section 841. Section 851(b) also allows the defendant to preserve for appeal his objections to the prior conviction.

Although the trial record does not contain a colloquy in which the district court specifically addressed each of the issues in section 851(b),[12] we nevertheless conclude that the substantive protections underlying that subsection were provided to Campbell in this case.[13] Defendant appreciated his right to challenge the state conviction; he filed a presentence motion which did just that. The motion acknowledged that he was the defendant but argued that the conviction did not qualify for sentencing enhancement purposes. The district court held a lengthy hearing on this issue, after which the court correctly ruled that the Virginia conviction qualified for federal sentence enhancement purposes.

We find that the district court complied with section 851(b) and therefore did not err in enhancing Campbell's sentence pursuant to section 841(b)(1)(B).

## VII.

For these reasons, we affirm both the conviction and the sentence of appellant Howard Quinton Campbell.

AFFIRMED.

---

**11.** Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence. 21 U.S.C. § 851(a)(1).

**12.** During sentencing, however, the following exchange took place:

Court: What is [Campbell's] status in the state? His sentence was deferred on his first conviction.
Attorney: He has served his time for that state charge—
Campbell: Yes, sir.
Attorney:—haven't you, Mr. Campbell?
Campbell: Yes, sir.

**13.** Our colleagues in both the Fifth and the Eleventh Circuits have generally insisted upon "strict," rather than "substantial," compliance with the requirements of section 851. *See United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir.1991); *United States v. Cevallos*, 538 F.2d 1122, 1126–27 (5th Cir.1976). In determining whether there has been such compliance, those courts have considered not simply whether "magic words" were recited by the district court, but whether the substantive protections of section 851 were afforded the defendant.