**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

IRMA JEANETTE CHANGTIN,
         *Defendant-Appellant.*

No. 99-4327

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

WILLIAM WALLACE HILL,
         *Defendant-Appellant.*

No. 00-4054

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-98-67-DKC)

Argued: April 4, 2001

Decided: May 18, 2001

Before WIDENER and NIEMEYER, Circuit Judges, and
Lacy H. THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Frederick Arnold Douglas, LEFTWICH & DOUGLAS, P.L.L.C., Washington, D.C., for Appellant Changtin; Marc Seguinot, SMITH & GREENE, P.L.L.C., Fairfax, Virginia, for Appellant Hill. Steven Michael Dettelbach, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Deborah A. Johnston, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this appeal, Irma Changtin and William Wallace Hill challenge their drug-related convictions. Changtin also challenges her sentence. Finding no error, we affirm.

I

Changtin and Hill were charged, along with several other individuals, in a seventeen-count, superseding indictment, dated May 13, 1998, with conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 and, derivatively, 21 U.S.C. § 841. Changtin was charged additionally, in three counts, with laundering drug money through automobile purchases, in violation of 18 U.S.C. § 1956, and Hill was charged additionally with cocaine distribution, in violation of 21 U.S.C. § 841.

Before trial, the ringleader of the conspiracy, Changtin's boyfriend, Heath Lewis, reached an agreement with the government in which he agreed to plead guilty and testify against his co-conspirators in exchange for the government's recommendation of a 20-year sen-

tence. At trial, Lewis explained generally to the jury that he and his colleagues purchased and sold kilogram quantities of cocaine and cocaine base for several years in and around Silver Spring, Maryland. He also testified against both Changtin and Hill specifically. Changtin, he said, "stashed" cocaine and a gun for him and created false documents so that he could conceal his identity when conducting certain transactions relating to his business. Lewis also testified that he laundered his drug money by purchasing several automobiles — three in two and one-half months — that Changtin assisted him by putting the cars in her name, and that she helped him develop an alias under which he purchased another car.

Hill, on the other hand, was at times Lewis' customer, competitor, supplier, and joint venturer. On one occasion in particular, Lewis testified, he and Hill agreed to travel to New York to purchase $75,000 worth of cocaine. The two men and Shawn McCants, a third co-conspirator, made the trip and successfully purchased the cocaine. Afterwards, because Hill and McCants expressed fear that McCants' mother would discover the cocaine if they kept it at McCants' residence, Lewis "stashed" Hill's share of the cocaine at his apartment.

Based on this testimony and other evidence, the jury convicted both Hill and Changtin of conspiracy, Changtin on the three money laundering counts, and Hill on the single distribution count. The district court sentenced Changtin to four 151-month terms, to be served concurrently, and Hill to two 151-month terms, to be served concurrently.

On appeal, Changtin argues that (1) the evidence was insufficient to support her drug conspiracy conviction; (2) the evidence was insufficient to support her money laundering convictions; (3) the district court erred when it held her responsible for 3.5 to 5 kilograms of cocaine; and (4) her attorney's conflict of interest rendered his representation of her constitutionally inadequate. Hill also challenges the sufficiency of the evidence supporting his conspiracy conviction and the adequacy of his allegedly conflicted counsel's representation of him at trial.

## II

Changtin and Hill first contest the sufficiency of the evidence supporting their convictions for conspiracy to distribute and possess with

intent to distribute cocaine and cocaine base. When reviewing such claims, we determine whether there was sufficient evidence, when considered in a light most favorable to the Government, from which a rational jury could have concluded that the defendant was guilty beyond a reasonable doubt. *See United States v. Phan*, 121 F.3d 149, 152 (4th Cir. 1997).

Changtin acknowledges that the acts of which she was accused — "stashing" cocaine and a gun, among others — are sufficient to give rise to conspiratorial liability under 21 U.S.C. § 846. *See United States v. Burgos*, 94 F.3d 849, 858-59 (4th Cir. 1996) (en banc). Nevertheless, she challenges the sufficiency of such evidence because it was provided only by Lewis, "an admitted felon who, by his own admission, was testifying so that he could 'cop' to twenty years rather than spending the rest of his life behind bars." She argues that testimony given in these circumstances, standing alone, is insufficient to support her conviction.

Even assuming that Lewis' testimony provided the only evidence of Changtin's participation in the conspiracy, the established law of this Circuit holds that "the uncorroborated testimony of an accomplice may be sufficient to sustain a conviction." *United States v. Baker*, 985 F.2d 1248, 1255 (4th Cir. 1993). This rule is simply a corollary of the notion that in reviewing a conviction on sufficiency grounds, we view the evidence in a light most favorable to the government and do not question the credibility of the government's witnesses. *See United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998). Accordingly, we find Changtin's argument to be without merit.

Hill, on the other hand, admits that the evidence proved that he sold drugs. But he disputes the notion that he and Lewis conspired with one another, noting (1) that Lewis testified that he and Hill were competitors at times; (2) that the evidence shows, at most, that Hill and Lewis had a buyer-seller relationship; and (3) that all of the drug evidence in the case was found in Lewis' residence rather than Hill's.

To support a conviction for conspiracy, the government must prove (1) the existence of an agreement between two or more persons to engage in conduct that violates the criminal laws of the United States and (2) the defendant's participation in that agreement. *See United*

*States v. Campbell*, 980 F.2d 245, 249 (4th Cir. 1992). The evidence in the record, when viewed in a light most favorable to the government, unequivocally showed that Hill and Lewis conspired with each other to make the $75,000 purchase of cocaine in New York, a purchase that they accomplished, and that they agreed that Lewis would keep Hill's share of that cocaine for some time. Moreover, Lewis and Hill jointly endeavored to obtain fake identification cards to assist them in their drug distribution activities. In addition, in 1997, Hill and Lewis "recompressed" cocaine together, thus easing the distribution of the cocaine. And throughout the time period at issue, Lewis served as the supplier for Hill's retail operations, routinely selling drugs to Hill for resale on the understanding that "if he got it through me, then I would reap some of the benefits." *Cf. United States v. Hines*, 717 F.2d 1481, 1489-90 (4th Cir. 1983) (noting that "chain" and "multi-level" conspiracies can constitute a single conspiracy). "[C]ontemporary drug conspiracies [can] contemplate[ ] . . . only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). It is of no import that all of the drug evidence in the case was found in Lewis' residence rather than Hill's.

The evidence produced at trial readily supports Hill's conspiracy conviction.

### III

Changtin contends also that the evidence was insufficient to support her three convictions for money laundering.

The money laundering statute provides punishment for any person who, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). Changtin was indicted and convicted on the theory

that her purchases of three different automobiles on Lewis' behalf constituted "financial transactions" within the meaning of the statute. She argues that the evidence was insufficient to prove that she *knew* (1) that the proceeds used to purchase the automobiles constituted drug money and (2) that the transactions were designed to conceal or disguise these proceeds.

The evidence in the record, however, was ample to show that Changtin knew that Lewis was a drug dealer and derived his money from drug dealing. Lewis testified that he told Changtin that he was a drug dealer, that she stored cocaine for him, and that he cooked crack cocaine in her presence on at least two occasions. A rational jury could have easily concluded from this evidence that Changtin knew that the funds Lewis gave her to purchase the automobiles were the proceeds of drug money. *See United States v. Campbell*, 977 F.2d 854, 858-59 (4th Cir. 1992) (finding sufficient evidence of knowledge where the defendant suspected that funds might have been drug money and was aware of launderer's posh lifestyle). Moreover, given her awareness of the nature of the funds at issue, Changtin's knowledge that the transactions were designed to conceal or disguise the proceeds could have been inferred from the transactions' irregular nature. *See id.* at 858 n.5. Here, the automobile purchases were of a highly suspicious variety. Title to the automobiles was put in Changtin's name despite the fact she never drove them, and Lewis bought three expensive cars within a two-month time period. A rational jury could have concluded from this evidence that Changtin knew that the transactions were designed to hide drug proceeds. That conclusion would have been bolstered by testimony that FBI agents told Changtin that one of the automobiles "was part of the drug activity and drug purchases," as well as by the false exculpatory statements subsequently given by Changtin to the IRS about the purchases.

IV

Changtin also argues that the district court erred when, in sentencing her, it attributed between 3.5 and 5 kilograms of cocaine to her. We review a sentencing court's factual determinations of drug quantity for clear error. *See United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998).

At Changtin's sentencing hearing, Lewis testified that he stored a bag containing four kilograms of cocaine at Changtin's apartment between July 1995 and July 1996; that he periodically removed cocaine from the bag and sold it; and that he replenished the "stash" with a kilogram or more of cocaine "at least once a week." Based on this testimony, the district court found:

> 3.5 but less than 5 kilograms was foreseeable under the testimony I find most reliable. . . . It was, therefore, a substantial period of time, and whether it was daily, ever[y] other day or weekly that he sold and replenished, she knew what he was doing was dealing and I find that quantity reasonably foreseeable to her in terms of her assistance.

In light of Lewis' testimony, that conclusion was not clearly erroneous. Indeed, Lewis' testimony tended to show, if anything, that far more than five kilograms of cocaine were stored in Changtin's apartment over the course of the conspiracy.

V

Finally, both Changtin and Hill raise claims of ineffective assistance of counsel based on their trial lawyers' prejudicial conflicts of interest. Changtin argues here, as she did below in a motion for a new trial, that Goodwin Oyewole, her trial attorney, unethically prepared an affidavit for Lewis and failed to cross-examine Lewis effectively out of a fear that his ethical breach would be exposed. Hill, on the other hand, asserts that his trial counsel, Gregory Lattimore, faced a conflict of interest through his simultaneous representation of Hill and McCants, who was indicted in a parallel narcotics case.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a plaintiff asserting a claim for ineffective assistance of counsel must show (1) that her counsel's performance was below the level expected of a reasonably competent attorney, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Mickens v. Taylor*, 240 F.3d 348, 359-60 (4th Cir. 2001) (en banc) (holding that a habeas petitioner asserting a conflict of interest of which the trial court should have known must show that the conflict had an

adverse effect on his representation), *cert. granted*, No. 00-9285, ___ S. Ct. ___, 2001 WL 348935 (Apr. 16, 2001). Nevertheless, such claims should be raised in a 28 U.S.C. § 2255 habeas motion in the district court rather than on direct appeal "unless the record conclusively shows ineffective assistance." *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). Because the record at this stage does not conclusively establish the constitutional ineffectiveness of either of the defendants' counsel, we dismiss these claims without prejudice so that they may be brought in a subsequent proceeding under 28 U.S.C. § 2255.

For the foregoing reasons, the judgments of the district court are

*AFFIRMED*.